UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
                                          :
In re                                     :          Chapter 11
                                          :
YCMTSU, LLC (f/k/a HydroGen, LLC),        :          Case No. 08-14139 (AJG)
                                          :
                                          :
                          Debtor.         :
                                          :
---------------------------------------------------x

## OBJECTION OF THE UNITED STATES TRUSTEE
## TO APPLICATIONS FOR FINAL COMPENSATION

TO:     THE HONORABLE ARTHUR J. GONZALEZ,
        CHIEF UNITED STATES BANKRUPTCY JUDGE:

        Tracy Hope Davis, the United States Trustee for Region 2 (the "United States

Trustee"), by and through her counsel, has reviewed the following applications (the

"Final Applications") of the retained professionals (the "Retained Professionals") seeking

awards of final compensation and reimbursement of out-of-pocket expenses for the

period from October 22, 2008, through August 18, 2011:

| Applicant | Period | Fees | Expenses | Hours |
|-----------|--------|------|----------|-------|
| Law Offices of David C. McGrail/McGrail & Bensinger LLP, Counsel and Successor Counsel to the Debtor | October 22, 2008, through August 18, 2011 | $98,700.00 | $319.55 | 329.0 |
| Arent Fox LLP, Counsel to the Creditors' Committee | November 10, 2008, through July 31, 2011 | $341,045.50[1] | $5,320.23 | 791.0 |

---

[1] Arent Fox included in its fee request the sum of $5,000.00 for "anticipated fees."  As discussed below at paragraph 55, the United States Trustee objects to this request because these fees are not compensable under Section 330(a)(1)(A) of title 11, United States Code (the "Bankruptcy Code").  See 11 U.S.C. § 330(a)(1)(A) (permitting compensation only for "actual" services rendered).

# I. INTRODUCTION

The Retained Professionals seek final fees in the amount of $439,745.50 and reimbursement of out-of-pocket expenses in the amount of $5,639.78. For the reasons set forth below, the United States Trustee objects to certain requests for final allowances of fees and proposes that (i) the Court reduce any fees awarded to the Retained Professionals by approximately $40,000.00, or 9 percent of the total fees sought, and (ii) disallow reimbursement of out-of-pocket expenses in the amount of $340.00, or 6 percent of the total expense reimbursements requested. In addition, should the Court deny the joint motion of the Debtor and the Creditors' Committee to dismiss this case, and instead convert the case to a case under Chapter 7 of the Bankruptcy Code, then the United States Trustee objects to any payment of fees awarded until such time as the Court approves the Chapter 7 trustee's final report.

# II. FACTS

## The Chapter 11 Filing

1. On October 22, 2008 (the "Petition Date"), HydroGen, L.L.C. (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtor is an Ohio limited liability company and a wholly owned subsidiary of Hydrogen Corporation ("Hydrogen Corp."). See Affidavit of Scott M. Schechter Pursuant to Local Rule 1007-2, sworn to on October 22, 2008 (the "Schechter Affidavit") at ¶ 4. (ECF Dkt. No. 2). At the commencement of this case, the Debtor was engaged in the manufacture of phosphoric acid fuels for use in modules and power plants fueled by hydrogen and hydrocarbon gases. Id. at ¶ 5.

3. On November 10, 2008, the United States Trustee, pursuant to Section 1102(a)(1) of the Bankruptcy Code, appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee"). (ECF Dkt. No. 35).

4. Since the Petition Date, the Debtor has operated its business and managed its property as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

5. On the Petition Date, the Debtor filed an application (the "McGrail Firm Retention Application") seeking authorization to retain the Law Offices of David C. McGrail as its counsel. (ECF Dkt. No. 6). The McGrail Firm Retention Application provides the following retainer information:

> The Firm is currently holding $20,000 (the "Chapter 11 Retainer") in a segregated, interest-bearing account to secure the payment of the Firm's post-petition fees and expenses, as allowed by this Court. At the conclusion of the Firm's representation of the Debtor in this case, to the extent the unpaid fees and expenses allowed by this Court do not exceed the amount of the Chapter 11 Retainer, the Firm will promptly return to the Debtor's estate that portion of the Chapter 11 Retainer that the Firm does not apply to cover such unpaid fees and expenses.

McGrail Firm Retention Application at ¶ 29.

6. By Order dated November 19, 2008, the Court granted the McGrail Firm Retention Application. (ECF Dkt. No. 43).

7. By Order dated December 30, 2008, the Court authorized the Creditors' Committee to retain Arent Fox LLP ("Arent Fox") as its counsel. (ECF Dkt. No. 63).

8.      On August 20, 2010, the Court "so ordered" a stipulation among Joseph Sarachek,[2] the McGrail Firm and McGrail & Bensinger LLP ("M&B") which provided that M&B would be substituted for the McGrail Firm as counsel to the Debtor effective as of August 1, 2010.  (ECF Dkt. No. 222).

**Motion to Convert**

9.      On February 2, 2009, Federated Kaufman Fund, a portfolio of Federated Equity Funds ("Federated"), filed a motion (the "Conversion Motion"), pursuant to Section 1112(b) of the Bankruptcy Code, to convert the Debtor's case to a case under Chapter 7 of the Bankruptcy Code.  (ECF Dkt. No. 89).  Federated asserted that cause existed to convert the case because, among others, there was no likelihood that the Debtor could reorganize.  Id. at ¶¶ 18-22.

10.     A hearing for the Court to consider the Conversion Motion initially was scheduled for February 25, 2009, however, Federated subsequently consented to adjourn the hearing from time to time.  (ECF Dkt. Nos. 89 and 100).

11.     On April 9, 2009, counsel for the Creditors' Committee filed a motion (the "9019 Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking approval of a settlement (the "Settlement") among the Debtor, the Creditors' Committee, Federated and Samsung C&T Corporation ("Samsung" and together with Federated, the "Secured Lenders"), resolving the Conversion Motion and other issues asserted by the Debtor and the Creditors' Committee against the Secured Lenders.  (ECF Dkt. No. 122).  Among other things, the Settlement

---

[2] Mr. Sarachek is a managing director of Triax Capital Advisors, LLC ("Triax"), financial advisors to the Debtor.  See ECF Dkt. Nos. 19 and 44.  Upon information and belief, Mr. Sarachek currently serves as CEO for the Debtor.

provided that (i) the case would not be converted, (ii) the Secured Lenders' claims would be fixed at an aggregate of $1,450,000.00, (iii) the Secured Lenders would accept payment of $650,000.00 as payment in full satisfaction of their outstanding claims and upon payment, would no longer be creditors of the estate, (iv) the Debtor would pay the $650,000.00 on or before August 1, 2009, and (v) and certain causes of action would be transferred to the Creditors' Committee.  9019 Motion at ¶ 8 and Ex. 1.

12.    By Opinion and Order dated May 7, 2009, the Court granted the 9019 Motion.  (ECF Dkt. No. 147).

**Actions Commenced by the Creditors' Committee**

13.    Beginning on April 1, 2009, the Creditors' Committee commenced various actions on behalf of the Debtor that fall into two groups: (i) D&O litigation and (ii) avoidance actions.  See Adv. Pro. Nos. 09-1142, and 09-1932 through 09-1942.

*D&O Litigation*

14.    On April 1, 2009, the Creditors' Committee commenced an action (the "D&O Litigation") against certain current and former officers and/or directors of the Debtor and/or its parent, Hydrogen Corp.  See Adv. Pro. No. 09-1142 ECF Dkt. No. 1. By Order dated February 23, 2011, the Court approved a stipulation settling the D&O Litigation pursuant to which former directors paid to the Debtor the sum of $75,000.00 and the adversary proceeding was dismissed.  See Adv. Pro. No. 09-1142 ECF Dkt. No. 85.

*Avoidance Actions*

15.    Beginning in December 2009, the Creditors' Committee commenced 11 preference actions in this case on behalf of the Debtor.  By Orders dated July 23, 2009,

and December 30, 2009, the Creditors' Committee retained Receivable Services

Management Corporation ("RMS") to prosecute these actions. (ECF Dkt. No. 175 and

205). A review of the Court's docket reveals that RMS obtained settlements in six of

these proceedings and dismissed the remaining five actions. As a result, it appears that

the prosecution of these proceedings resulted in recoveries to the estate of approximately

$46,000.00, net of RMS's fees and the costs of filing these actions.

**Sales of Assets**

16.     On May 14, 2009, the Debtor filed a motion (the "Sale Motion") seeking

an Order granting its request to sell substantially all of its assets to Sainergy Tech, Inc.

(ECF Dkt. No. 149). The assets to be sold by the Sale Motion did not include the

Debtor's intellectual property.

17.     By Order dated June 8, 2009, the Court granted the Sale Motion. (ECF

Dkt. No. 159).

18.     On February 10, 2010, the Debtor filed a motion (the "Intellectual

Property Sale Motion") to sell its intellectual property. (ECF Dkt. No. 207).

19.     By Order dated March 17, 2010, the Court granted the Intellectual

Property Sale Motion. (ECF Dkt. No. 212).

**Bar Dates and Status of Claims**

20.     By Order dated October 30, 2008, the Court fixed December 5, 2008, as

the last day by which creditors, other than governmental creditors, could file proofs of

claim against the Debtor. (ECF Dkt. No. 25). By the same Order, the Court fixed April

20, 2009, as the last day by which governmental units could file claims against the

Debtor. Id.

21.     By Order dated March 1, 2011, the Court fixed April 15, 2011, as the last day by which creditors holding claims arising after the Petition Date could file administrative claims against the Debtor.  (ECF Dkt. No. 233).

22.     A review of the Court's claims register reveals that claims in the aggregate amount of $16,717,573.73 were filed against the Debtor.  These claims are represented as:  $10,363,741.59 unsecured, $1,902,412.92 secured, $4,263,541.72 priority and $187,877.50 unknown.[3]  Further, a review of the Court's docket and the claims register reveals that administrative claims in this case appear to aggregate $66,768.89, exclusive of professional fee claims of the Retained Professionals.

**Prior Interim Fee Applications**

23.     On October 2, 2009, the McGrail Firm filed an application (the "First McGrail Fee Application") seeking an interim allowance of fees in the amount of $36,930.00 and reimbursement of out-of-pocket expenses in the amount of $258.38 for the period from October 22, 2008, through January 31, 2009.  (ECF Dkt. No. 88).  By Order dated March 11, 2009, the Court granted the First McGrail Fee Application, but ordered that only $20,000.00 in fees was immediately payable.  (ECF Dkt. No. 111).[4]

---

[3] These figures may not reflect the most current data available because at least two of the claims listed, those of Federated and Samsung, are listed on the claims register in amounts in excess of $1.5 million.  See Claims Register at Nos. 77 and 78.  As discussed above at paragraph 11, these secured claims were settled and fixed at $1,450,00.00 in the aggregate and should have been, albeit apparently was not, paid in full.

[4] In the Second McGrail Fee Application (discussed below), the firm states that, in connection with its first fee application, the Court authorized the McGrail Firm to apply the Chapter 11 Retainer and, therefore, the retainer was the source of the $20,000.00 payment made to the McGrail Firm in connection with the First McGrail Fee Application.  See Second McGrail Fee Application at ¶ 11.  A review of the First McGrail Fee Application and the Court's Order approving the application reveals that there was no referenced therein to the Chapter 11 Retainer.

24.     On December 9, 2009, the McGrail Firm filed an application (the "Second McGrail Fee Application") seeking an interim allowance of fees in the amount of $42,900.00 and reimbursement of out-of-pocket expenses in the amount of $41.97 for the period from February 1, 2009, through November 30, 2009.  (ECF Dkt. No. 188).  By the Second McGrail Fee Application, the McGrail Firm sought allowance of fees in the amount of $42,000.00, but payment of only $15,000.00 that it claimed would be paid from a carve-out (the "Carve-Out") from the Secured Lender's collateral.[5]  Second McGrail Fee Application at ¶ 14.  By Order dated December 30, 2009, the Court granted, in part, the Second McGrail Fee Application, awarding the McGrail Firm $38,610.00 in fees and $41.97 in out-of-pocket expenses.[6]  (ECF Dkt. No. 206).  This Order provides that $35,000.00 (in total) was immediately payable as follows: $20,000.00 from the Chapter 11 Retainer and $15,000.00 from the Carve-Out.[7]  Id. at Scheds. A(1) and A(2).

---

[5] Neither the 9019 Motion nor the Stipulation provides for the Carve-Out.  Upon information and belief, the Carve-Out came into existence after the Debtor failed to pay the Secured Lenders the $650,000.00 by August 1, 2009, and thus defaulted under the Settlement.  Upon further information and belief, the Secured Lenders, in exchange for the Debtor releasing to them a $500,000.00 partial payment, the Secured Lenders agreed that they would not file a second motion to convert the case and the Debtor could maintain the remaining $65,000.00 of cash on hand to pay its lawyers, the lawyers for the Creditors' Committee and other administrative costs.  This agreement apparently also was based upon the premise that 80% of any other recoveries by the estate would be paid over to the Secured Lenders until the remaining balance ($150,000.00) was paid.  Upon information and belief, the Secured Lenders were paid no more than $526,000.00 in total.  A review of the docket does not indicate that the Debtor sought court authorization to modify the Settlement or otherwise informed the Court and all parties in interest that the Debtor had defaulted under the Settlement.

[6] The Court imposed a 10% holdback (or $4,290.00) on the McGrail Firm's requested fees and authorized the Debtor to pay the $15,000.00 "Carve Out" to the McGrail Firm.  See ECF Dkt. No. 206.

[7] This appears to be the first mention of the Chapter 11 Retainer in the Court's fee Orders.  See ECF Dkt. Nos. 111 and 206.

**Current Fee Applications**

25.    On August 19, 2011, the McGrail Firm and M&B filed a combined fee application (the "Joint McGrail/M&B Application") pursuant to which the McGrail Firm, on the one hand, and M&B on the other, sought final fees and expenses aggregating $98,700.00 and $300.35, respectively.  (ECF Dkt. No. 249).

26.    Upon review of the Joint McGrail/M&B Application, counsel for the United States Trustee had discussions with the Debtor's counsel and expressed concerns that (i) the Debtor had not filed separate final fee applications for the two law firms, and (ii) the time records did not indicate clearly which services had been performed by the respective firms or provide complete dates for fees incurred.

27.    On September 7, 2011, the Debtor filed an amendment (the "Amendment") to the Joint McGrail/M&B Fee Application.  (ECF Dkt. No. 252).  By the Amendment, the Debtor modified the initial application and revised its final fee requests as follows:  (i) for the McGrail Firm, $87,990.00 in fees and $300.35 in expenses and (ii) for M&B, $10,710.00 in fees and $0.00 in expenses.

28.    On August 22, 2011, Arent Fox filed an application (the "Arent Fox Fee Application") seeking final fees in the amount of $341,045.50 and reimbursement of out-of-pocket expenses in the amount of $5,320.33.  (ECF Dkt. No. 249).  A hearing to consider the Final Fee Applications currently is scheduled to be held on September 14, 2011, at 9:30 a.m.

## Case Status

*Joint Motion to Dismiss*

29.      On August 19, 2011, the Debtor and the Creditors' Committee filed a joint motion (the "Joint Dismissal Motion") seeking an Order from the Court dismissing the case under Section 1112(b) of the Bankruptcy Code, citing the Debtor's inability to reorganize as "cause" to dismiss the case.  (ECF Dkt. No. 246).  By the Joint Dismissal Motion, the movants propose, among other things, that the Court authorize them to distribute the remaining estate assets to their lawyers, including the McGrail Firm, M&B and Arent Fox, who collectively have requested fees of approximately $445,000.00, together with the other administrative creditors holding approximately $66,000.00 in claims, on a pro rata basis, and grant broad releases to the parties which include non-debtor third parties.  Id.  Under the Joint Dismissal Motion there will be no distribution to unsecured creditors.

30.      In separate papers being filed contemporaneously herewith, the United States Trustee responds to the Joint Dismissal Motion.  A hearing to consider the Joint Dismissal Motion is scheduled for September 14, 2011, at 9:30 a.m.

*Monthly Operating Reports and US Trustee Fees*

31.      The Debtor is current with the filing of its monthly operating reports.  The monthly operating report for the period ending July 31, 2011, provides that the Debtor currently has cash on hand in the approximate amount of $144,000.00.[8]  (ECF Dkt. No. 559).  The Debtor is current with the payment of fees due and owing to the United States Trustee pursuant to Section 1930 of title 28, United States Code ("U.S. Trustee Fees").

---

[8] In the Joint Dismissal Motion, the Debtor asserts that there is $154,756.56 in the estate. See Joint Dismissal Motion at ¶ 16.

# III. LEGAL STANDARDS

**A.** **Reasonableness**

32. Bankruptcy Code Section 330(a)(1) provides that:

After notice to the parties in interest and the United States trustee and a hearing, and subject to section 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, … or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

33. To determine reasonableness, Section 330(a)(3) of the Bankruptcy Code instructs that:

. . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

a. the time spent on such services;

b. the rates charged for such services;

c. whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

d. whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

e. with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

       f.       whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

34.     Each applicant bears the burden of proof for its claim for compensation. Howard & Zukin Capital v. High River Ltd. P'ship, No. 05 Civ. 5726 (BSJ), 2007 WL 1217268, at *2 (S.D.N.Y. Apr. 24, 2007); Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997); In re Northwest Airlines Corp., 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997).  The failure of an applicant to sustain the burden of proof as to the reasonableness of the compensation may result in the denial of the request for compensation.  In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988).

35.     The Court has an independent burden to review fee applications "lest overreaching … professionals drain [the estate] of wealth which by right should inure to the benefit of unsecured creditors."  Keene Corp., 205 B.R. at 695 (quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)).

36.     In enacting the Bankruptcy Code, Congress made clear that there is an inherent public interest that must be considered in awarding fees in a bankruptcy case. Senate Report No. 95-989, 95th Congress, 2d Session 40 (1978).  U.S. Code Cong. & Admin. News 1978, p. 5787.  Thus, the Bankruptcy Code imposes upon the Court a supervisory obligation not only to approve the employment of professionals, but also to ensure that the fees sought by those professionals in a bankruptcy case are reasonable, and that the services and expenses were actually and necessarily incurred.  In re Fibermark, Inc., 349 B.R. 385, 393 (Bankr. D.Vt. 2006).  This responsibility is especially

acute since the professionals seek compensation out of a bankruptcy estate. <u>Id.</u> at 394

(citing <u>S.T.N. Enters., Inc.</u>, 70 B.R. 823, 832 (Bankr. D.Vt. 1987)). The rationale for the

bankruptcy court's independent duty to review fee applications has been described as "a

duty to ... protect the estate 'lest overreaching ... professionals drain it of wealth which by

right should inure to the benefit of unsecured creditors.'" <u>Id.</u> (quoting <u>In re Keene Corp.</u>,

205 B.R. at 695)).

37.     Further, the Bankruptcy Court has the authority to reduce fees or expenses

when they are disproportionate to the benefit to the estate, even if it already has approved

the professional's retention under Sections 327 and 328 of the Bankruptcy Code. <u>In re

Taxman Clothing Co.</u>, 49 F.3d 310, 316 (7th Cir. 1995); <u>see also</u> <u>Zolfo, Cooper & Co. v.

Sunbeam-Oster Co., Inc.</u>, 50 F.3d 253, 262-63 (3d Cir. 1995) (affirming lower courts'

denial of improperly documented and inadequately detailed expenses).

**"Lumping" or Block Billing**

38.     The standards for time records are contained in the United States Trustee

Fee Guidelines (the "UST Guidelines," and together with the Court's guidelines set forth

in General Order M-389, the "Guidelines"). The UST Guidelines provide that:

> Services should be noted in detail and not combined or
> "lumped" together, with each service showing a separate
> time entry; . . . . Time entries for telephone calls, letters,
> and other communications should give sufficient detail to
> identify the parties to and the nature of the communication.
> Time entries for court hearings and conferences should
> identify the subject of the hearing or conference.

<u>See</u> UST Guidelines at (b)(4)(v).

39.     Generally, fee applications, standing alone, must contain sufficient detail

to demonstrate compliance with Section 330 of the Bankruptcy Code. <u>In re CCT

Commc'ns, Inc., No. 07-10210, 2010 WL 3386947, at *4 (Bankr. S.D.N.Y. Aug. 24, 2010) (citing UST Guidelines at (b)). Any uncertainties due to poor record keeping are resolved against the applicant. Id. (citing In re Poseidon Pools of America, 216 B.R. 98, 100-101 (E.D.N.Y. 1997)).

40.    Billing records must clearly identify each discrete task billed, indicate the date the task was performed, the precise amount of time spent (not to be billed in increments greater than one-tenth of an hour, who performed the task, the level of experience and that person's hourly rate). In re Baker, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007) (citing In re Fibermark, Inc., 349 B.R. 385, 395 (Bankr. D. Vt. 2006)); see also, UST Guidelines at (b)(4)(iii). Aggregating of multiple tasks into one billing entry, typically referred to as block billing or lumping, is routinely disallowed as it makes it exceedingly difficult to determine the reasonableness of the time spent on each of the individual tasks performed. See Baker, 374 B.R. at 494 (citing Dimas, 357 B.R. at 576; Fibermark, 349 B.R. at 395; Poseidon Pools, 180 B.R. at 729) (additional citations omitted)). As a result of lumping time, the timekeeper fails to sustain [his] burden of providing that [his] fees are reasonable. Brous, 370 B.R. at 576. Consequently, courts summarily will disallow time for discrete legal services merged together in a fee application. Baker, 374 B.R. at 494, 496; see also CCT, 2010 WL 3386947, at *7) (bankruptcy court allowed only 30 minutes for each lumped entry, irrespective of the aggregate time billed for that entry).

**Vague Time Entries**

41.    In addition, time entries may not be vague. See Baker, 374 B.R. at 495 ("The records must be detailed enough to enable a Court to determine whether the

attorneys are claiming compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'"); see also In re Bennett Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997) ("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow compensation for such services.").  Such vague entries "make a fair evaluation of the work done and the reasonableness and necessity for the work extremely difficult, if not impossible."  In re Hudson, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007).  "Entries that contain such vague characterization of the services performed as 'meeting with,' 'conversations with,' 'review materials or docket,' and 'draft correspondence to' fail to adequately describe the services provided and are routinely disallowed."  In re Hirsch, No. 02-17966, 2008 WL 5234057, at *7 (Bankr. E.D.N.Y. Dec. 11, 2009).  Similarly, a timekeeper's use of the phrase "attention to" renders it "impossible to determine the nature of the service or activity that "attention" purports to describe."  CCT, 2010 WL 3386947, at *8.

**Overhead and Other Administrative Activities**

42.     Word processing is "a clerical service regardless of who performs it." Bennett Funding, 213 B.R. at 248.  As an overhead expense, word processing cannot be billed to the client.  Overhead also includes secretarial and clerical pay, library costs, and office supplies.  See In re Fibermark, Inc., 349 B.R. 385, 400 (Bankr. D. Vt. 2006) (Overhead expense reimbursement will be "denied . . . categorically.").  Moreover, the UST Guidelines provide that word processing expenses are non-reimbursable "overhead." See UST Guidelines at b(5)(vii).

**Preparation of Fee Applications and Monthly Fee Statements**

43.     Although the appropriateness of compensation for the preparation of a fee application is recognized implicitly in Section 330(a)(6) of the Bankruptcy Code, the Bankruptcy Code does not give professionals *carte blanche* to charge debtors' estates for unreasonable fees to prepare fee applications.  As the bankruptcy court in <u>In re Computer Learning Ctrs., Inc.</u>, 285 B.R. 191, 219-20 (Bankr. E.D. Va. 2002) held:

> [T]his does not mean that every aspect of preparing a fee application is compensable.  <u>In re CF & I Fabricators of Utah, Inc.</u>, 131 B.R. 474, 483-88 (Bankr. D. Utah 1991) carefully reviews the billing process and analyzes each aspect for purposes of compensation under 11 U.S.C. § 330. It holds that those portions of the billing process common to billing both bankruptcy clients and non-bankruptcy clients are not compensable under § 330 because they are part of the professional's overhead.  They are not separately charged to non-bankruptcy clients and no additional effort is required to complete them for a bankruptcy client.  For example, maintaining time records does not require additional effort.  Lawyers and accountants maintain the same time records in a non-bankruptcy matter as in bankruptcy matters.  Nor do lawyers or accountants charge for preparing their bills.  Bills must be prepared in non-bankruptcy matters as well as bankruptcy matters.  There may be some additional effort in putting the time records into the format required by the court.  For example, the court requires time records to be maintained chronologically by task.  While this may sometimes differ from the format of a non-bankruptcy bill, the additional effort is not generally significant if the records are initially properly set-up.  Time records are almost universally maintained on computers with software that shows multiple formats, one of which will usually satisfy the bankruptcy requirements.  A computer billing package used by a professional that does not retrieve information in a format compatible with bankruptcy requirements and requires revisions to rectify the inadequacies, is not a deficiency the estate should pay for. This is especially true for professionals who regularly practice in this court and regularly prepare fee applications.  Only those aspects of preparing a bankruptcy fee application that require additional-not merely different-efforts are compensable under § 330(a)(6).

See also <u>In re Mesa Air Group, Inc.</u>, No. 10-10018 (MG), 2011 WL 2028519, at *3 (Bankr. S.D.N.Y. May 25, 2011) (bankruptcy court finding that 3-5% of the total fees sought for preparing fee application is a "useful metric," and 8% in that case was "too

high"). Further, the review and editing of time records – as opposed to fee applications – is not compensable. <u>CCT</u>, 2010 WL 3386947, at *9 ("Outside of bankruptcy, lawyers presumably do not charge their clients for preparing time records.").

## B. Interim Compensation

44. Interim fee awards are discretionary, and are subject to re-examination and adjustment during the course of the case. <u>See</u> <u>In re Nana Daly's Pub, Ltd.</u>, 67 B.R. 782, 787 (Bankr. E.D.N.Y. 1986) ("Any award of interim compensation is within the discretion of the court and will be considered based upon the circumstances of the particular case." (citing <u>In re First Hartford Corp.</u>, 23 B.R. 729 (Bankr. S.D.N.Y. 1982) (bankruptcy judge deferred payment of interim compensation pending confirmation of debtor's plan of reorganization)); <u>see also</u> <u>In re Fernandez</u>, 441 B.R. 84, 98-99 (Bankr. S.D. Tex. 2010) (Because of the speculative nature of interim fee awards, they are "always subject to the court's reexamination and adjustment during the course of the case.") (additional citations omitted).

## C. Actual and Necessary Expenses

45. Under Section 330(a)(1)(B) of the Bankruptcy Code, only documented expenses that are actual and necessary are reimbursable. 11 U.S.C. § 330(a)(1)(B). Professionals must "furnish enough specificity for the Court to establish whether a given expense was both actual and necessary." <u>In re Korea Chosun Daily Times, Inc.</u>, 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (quoting <u>In re S.T.N. Enters., Inc.</u>, 70 B.R. 823, 834 (Bankr. D. Vt. 1987)). Expenses are "actual" if they are incurred and not based on a formula or <u>pro rata</u> calculation. <u>Bennett Funding</u>, 213 B.R. at 398. Expenses are "necessary" if they were "reasonably needed to accomplish proper representation of the

client." In re American Preferred Prescription, Inc., 218 B.R. 680, 686-87 (Bankr.
E.D.N.Y. 1998).

## IV. OBJECTION

### A. All Retained Professionals

46. Contemporaneously with this Objection, the United States Trustee, by and through her counsel, is filing a response to the Joint Dismissal Motion. For the reasons set forth therein, the Court may determine that converting this case to a case under Chapter 7 would be the appropriate resolution to this case. If the Court decides that the case should be converted, then the Chapter 7 Trustee should disburse any payments for Chapter 11 fees and expenses allowed by the Court only after the Court approves the Chapter 7 trustee's final report. In addition, for the reasons set forth below, the United States Trustee objects to the allowance of certain of the fees and expenses requested by the Retained Professionals.

### B. The McGrail Firm and M&B

a. Fees

(i) *The McGrail Firm*

47. As stated above at paragraphs 25-27, the Debtor initially filed the Joint McGrail/M&B Fee Application in which these firms sought to recover their final fees jointly. Following discussions with counsel to the United States Trustee, the Debtor filed the Amendment wherein it acknowledged the deficiencies pertaining to the Joint McGrail/M&B Fee Application. By the Amendment, the Debtor separated out the amounts of final fees and expenses sought by the two firms as follows: (i) for the

McGrail Firm, $87,990.00 in fees and $300.35 in expenses and (ii) for M&B, $10,710.00 in fees and $0.00 in expenses.

48.    A review of the Amendment reveals that it addresses the procedural concerns and time record issues raised by the United States Trustee.  Accordingly, the United States Trustee does not object to the form of the application as amended, or the time records contained therein.

49.    During the preparation of this Objection, however, it was discovered during a teleconference with the Secured Lenders' counsel, that a second settlement between the Secured Lenders, on the one hand, and the Debtor and the Creditors' Committee on the other, was reached subsequent to the Settlement that was approved by this Court's Order on May 7, 2009.  Upon information and belief, the Debtor defaulted under the Settlement and did not pay the Secured Lenders the $650,000.00 required by the Settlement on August 1, 2009.  Thereafter, to prevent the Secured Lenders from filing a second motion to convert the case, the parties reached a new accord pursuant to which the Debtor agreed to pay the Secured Lenders the sum of $500,000.00, and the Secured Lenders would permit the estate to retain the balance of the funds it had on hand, approximately $65,000.00, to, among other things, pay estate professionals including the McGrail Firm.  It further was agreed that the Debtor would pay to the Secured Lenders 80 percent of any subsequent recoveries brought into the estate.

50.    A review of the Court's docket does not reveal that the Debtor filed a separate motion to modify the Settlement and no Order was entered approving this modification under Bankruptcy Rule 9019.  In fact, the Second McGrail Fee Application the Carve-Out was part of the Settlement, stating:

> On May 7, 2009, the Court approved a global settlement stipulation providing, among other things, for the reduction of the secured lenders' claim to $650,000.00.  In connection with that settlement stipulation, the secured lenders agreed to carve out $15,000 (the "Carve-Out") from their collateral to cover the Firm's fees in this case.

Second McGrail Firm Fee Application at ¶ 8.

51.     A review of the 9019 motion and the Settlement do not reveal any provisions for a $15,000.00 carve-out.  Thus, it is not clear whether the Court ever was informed that: (i) the Debtor had defaulted under the Settlement, (ii) a new settlement agreement had been reached and (iii) that the "Carve-Out" was not a part of the original settlement, but rather created by the second settlement that was not approved by Order of this Court.  Further, it does not appear that any party filed papers with this Court that discloses this information.

52.     To the extent that the Court determines that the second settlement had not been disclosed adequately or approved by the Court, then it may be appropriate for the Court to consider whether to direct the McGrail Firm to disgorge these fees and return the sum of $15,000.00 to the estate.  See 11 U.S.C. § 329.

53.     Further, if the Court decides to grant the Joint Dismissal Motion and direct that the administrative creditors be paid pari passu as proposed, then it appears that the McGrail Firm would be required to return to the estate the sum of not less than $1,659.75.  Assuming arguendo that all of the final fees requested are awarded, with the exception of the $5,000.00 of anticipated fees requested by Arent Fox, then the McGrail Firm would be entitled to 17.57 percent of total assets of $189,756.66,[9] or $33,340.25.

---

[9] This figure includes the $154,756.56 that the Debtor has in cash on hand, plus the $35,000.00 that the McGrail Firm already has been paid in connection with the prior awards for interim fees.

Since the McGrail Firm already has received an aggregate payment in the amount of $35,000.00 on account of interim fee awards, the McGrail Firm already has received more fees than it is entitled to receive under this distribution plan. Accordingly, either way the Court decides, the McGrail Firm should be returning money to the estate and it is not entitled to any further payments.

    (ii)  *M&B*

54.  Subject to paragraph 46, the United States Trustee has no objection to the fees that M&B has requested.

    (ii)  <u>Expenses</u>

55.  Subject to paragraph 46, the United States Trustee has no objection to the out-of-pocket expense reimbursements that M&B has requested.

**C.**  **Arent Fox**

    (i)  <u>Fees</u>

56.  By its application, Arent Fox seeks an allowance of fees in the amount of $341,045.50 and reimbursement of out-of-pocket expenses in the amount of $5,320.23.

**Anticipated Fees**

57.  As part of its application, Arent Fox requests that the Court approve fees not to exceed $5,000.00 that Arent Fox anticipates it will incur from August 1, 2011, through the closure of this case. <u>See</u> Arent Fox Fee Application at 1. The United States Trustee objects to this request because the Bankruptcy Code does not permit awards of undisclosed, "anticipated" fees. Section 330(a)(1)(A) of the Bankruptcy Code permits a court, after notice to all creditors and a hearing, to award reasonable compensation for "actual, necessary services" rendered to the Debtor. 11 U.S.C. § 330(a)(1)(A). Arent

Fox neither discloses the fees that it has incurred since August 1, 2011, and cannot disclose fees that it "anticipates" through the closure of this case because these fees have not yet been incurred. Thus, they are not "actual." In essence, Arent Fox proposes that the Court provide the firm with a "credit" toward additional fees that it may incur, and waive the requirement that the firm provide notice to all creditors and afford a review by the Court and other interested parties in connection with its fee requests. Although Arent Fox may argue that $5,000.00 is a de minimus amount, the Bankruptcy Code does not permit compensation for fees that are not "actual," regardless of the amount requested. Accordingly, the United States Trustee proposes that the Court deny this request in its entirety.

**Vague Time Entries[10]**

58.     Generally, fee applications, standing alone, must contain sufficient detail to demonstrate compliance with Section 330 of the Bankruptcy Code. Brous, 370 B.R. at 569 (citing UST Guidelines at (b)). Any uncertainties due to poor record keeping are resolved against the applicant. See Poseidon Pools, 216 B.R. at 100-01.

59.     Arent Fox's time records include many vague time entries that do not comply with the Guidelines. By way of example only, these non-compliant time entries include:

---

[10] Many of the time entries identified in this Objection may be considered both "lumped" time and "vague," or are otherwise objectionable. Where the United States Trustee has identified non-compliant or otherwise objectionable time records that fall under multiple categories, counsel to the United States Trustee has endeavored to not include the non-compliant entry in more than one category when calculating proposed reductions.

| | | |
|---|---|---|
| 6/15/09 | JM Sullivan | Communications regarding avoidance litigation (.3) ($186.00). |
| 8/6/09 | AB Blankley | Telephone conference with Steve Beyer, Brian Hicks, Bill Reid, Jason Collins to discuss various case issues (.7) ($294.00). |
| 9/14/09 | HM Vogel | Work with Adrienne Blankley re certain provisions of D&O Policy and recent case law with respect to same (.7) ($350.00). |
| 12/18/09 | AB Blankley | Assist in coordination of litigation efforts (.4) ($168.00). |
| 3/8/10 | AB Blankley | Draft memorandum re all outstanding issues in case (.6) ($264.00). |
| 11/10/10 | AI Silfen | Various negotiation (.5) ($405.00). |

60.     Annexed hereto as **Exhibit A**, are copies of Arent Fox's time records containing the notation "V" adjacent to non-compliant, vague time entries. The total amount of these time entries is approximately $9,500.00. Accordingly, the United States Trustee proposes that the Court reduce Arent Fox's fees for these vague services by $4,750.00, which represents approximately 50 percent of the aggregate fees ($9,500.00) that Arent Fox seeks for these vague time entries.

**"Lumped" Time/Block Billing**

61.     The UST Guidelines provide that "services should be noted in detail and not 'lumped' together." UST Guidelines at b(4)(v). An applicant's failure to do so, makes it exceedingly difficult to determine whether the time spent was reasonable, as required by Section 330(a) of the Bankruptcy Code. See Baker, 374 B.R. at 494 (citing Dimas, 357 B.R. at 576; Fibermark, 349 B.R. at 395; Poseidon Pools, 180 B.R. at 729) (additional citations omitted). In addition, an applicant's failure to separately identify and detail its time records demonstrates its failure to establish its burden of proof to show that the requested fees are reasonable. See Brous, 370 B.R. at 576.

23

62.     Many of the time records contained in the Arent Fox Fee Application contain impermissibly "lumped" time.  See UST Guidelines at (b)(4)(v).  By way of example only, these time records include:

| | | |
|---|---|---|
| 3/31/09 | JM Sullivan | Drafting complaint against officers and directors and communications with S. Carroll and A. Blankley re: same (6.5) ($4,030.00) |
| 4/1/09 | JM Sullivan | Drafting complaint against officers and directors and communications re: same; review SEC filings, other background materials to investigate potential claims and to develp [sic] claims against directors and officers (4.2) ($2,604.00) |
| 12/22/09 | LA Indelicato | Prepare Notice of Presentment, Proposed Order and Affidavit of Service.  Revise and file Application of Service.  Revise and file Application to Expand Scope of RMS Retention.  Prepare service.  Discussions with Adrienne Blankley (3.1) ($821.50). |
| 1/18/11 | DJ Kozlowski | Draft, review and revise 9019 motion and follow up discuss re same with Andrew Silfen (2.7) ($1,215.00) |

63.     Annexed as **Exhibit A** are copies of Arent Fox's time records containing the notation "L" adjacent to non-compliant, "lumped" time entries.  The total amount of these time entries is approximately $16,000.00.  The United States Trustee proposes that the Court reduce Arent Fox's fees for these lumped time entries by $8,000.00, which represents an approximate 50 percent reduction of the total fees sought ($16,000.00) by Arent Fox for these "lumped" time entries.

**Lumped Time/Travel Time**

64.     Several of the time entries for Arent Fox's professionals contain improperly "lumped" services rendered in connection with the attendance at meetings or court appearances.  The travel time apparently has been billed at 100 percent of the attorney's hourly rate. These time entries fail to comply with the UST Guidelines because

they include "lumped" time. <u>See</u> UST Guidelines at b(4)(iii). The fees sought also do not comport with the established practice in this Circuit that the firm's bill travel time at 50 percent of the professional's hourly rate, as opposed to the full rate. <u>See</u> <u>Petronella v. ACAS</u>, No. Civ. 302CV01047 (WWE), 2004 WL 1688525 at *1 (D. Conn. Jan. 23, 2004) (citing <u>Spray Holdings, Ltd. v. Pali Fin. Group, Inc.</u>, 2003 U.S. Dist. LEXIS 13980 (S.D.N.Y. 2003)). By way of example only, the Arent Fox time records contain the following entries:

| | | |
|---|---|---|
| 11/24/08 | DJ Kozlowski | Travel to, attend and return from 341 meeting (2.7) ($877.50) |
| 12/10/08 | AB Blankley | Prepare for and travel to and from status conference for sales process (2.4) ($948.00) |
| 6/08/09 | AB Blankley | Prepare for, travel to and from and appear on behalf of Committee at hearing on motion to sell carbon paper and related assets (2.3) ($920.00) |

65. Attached hereto as **Exhibit A** are copies of Arent Fox's time records with the notation "T/T" or "L, T/T" which signify the lumped legal time and travel time. The total amount of these lumped time entries is approximately $6,750.00. Assuming that $2,850.00 of this time was spent traveling to and from these meetings (which amount was calculated by (i) fixing the travel time to and from court or a meeting at 1 hour and then (ii) multiplying the number of hours spent by the hourly rate of the particular timekeeper), the United States Trustee proposes that the Court reduce any fees awarded to Arent Fox by the amount of $1,425.00, which represents 50 percent of the total fees incurred for this travel time.

**Overhead/Administration and Staffing Inefficiencies**

66. Arent Fox seeks approval of fees for time spent by its professionals on what appear to be clerical and/or administrative duties. Specifically, Arent Fox seeks to bill the estates for, among others, updating and maintaining calendars, preparing binders, mailing documents, scanning documents, black lining and editing documents, downloading and retrieving documents. These services are clerical and/or administrative and a part of the firm's overhead. Thus, they are non-compensable by the estates. See Fibermark, 349 B.R. at 400; see also UST Guidelines at (b)(5)(vii).

67. Annexed hereto as **Exhibit A**, are copies of Arent Fox's time records containing the notation "OH" adjacent to time entries that are clerical or administrative in nature and a part of Arent Fox's overhead. The total amount of fees that Arent Fox seeks to bill the estates for these overhead and administrative charges is approximately $4,600.00. Accordingly, the United States Trustee proposes that the Court reduce Arent Fox's fees for these overhead and administrative fees by $4,600.00, which represents the amount that Arent Fox seeks for these non-compensable, overhead and administrative time entries.

**Preparation and Review of Billing Invoices**

68. By its application, Arent Fox seeks to bill the estate $[] for preparing and reviewing its invoices. Specifically, the time records provide for "reviewing time records." These services are a part of Arent Fox's overhead and are not compensable by the Debtor's estate. See CCT, 2010 WL 3386947 a *9 ("the review and editing of time records – as opposed to fee applications – is not compensable."); see also Mesa Air Group, Inc., 449 B.R. 441, 446 (Bankr. S.D.N.Y. 2011) (reviewing time records is not

compensable); In re Computer Learning, 285 B.R. at 219-220 ("those portions of the billing process common to billing both bankruptcy and non-bankruptcy clients are not compensable under section 330 because they are part of the professional's overhead.").

69.     Annexed hereto as **Exhibit A** are copies of Arent Fox's time records containing the notation "F/F" adjacent to time entries that are for preparing or reviewing invoices.  The total amount of fees that Arent Fox seeks to bill the estates for these non-compensable services is approximately $5,425.00.  Accordingly, the United States Trustee proposes that the Court reduce any award of fees to Arent Fox by $5,425.00, which represents the amount that Arent Fox seeks for these non-compensable time entries.

**Drafting Retention Papers for Diamond McCarthy/RMS**

70.     By its application, Arent Fox seeks fees in connection with services it performed to prepare and file retention applications for two legal services providers, namely, two law firms, namely, Diamond McCarthy LLP ("DM") and RMS.  There is no dispute that the reasonable time spent by a professional employed by the Debtor for preparing its own retention application may be awarded to that professional so long as the professional properly applied for the fees.  Although it is not unusual for a debtor's counsel to file retention applications for applicants retained by the debtor who do not regularly use the PACER system, it is not common, nor has Arent Fox included in its application any support for debtor's counsel or committee counsel to prepare the retention applications for other lawyers being retained by the estate.  Indeed, Arent Fox has not met its burden of proof to show that it may be compensated for the reasonable fees incurred in the preparation of another professional's retention application are

compensable. See Howard & Zukin Capital, 2007 WL 1217268, at *2; Zeisler & Zeisler, 210 B.R. at 24. In fact, here, Diamond McCarthy never was retained by the estate.

71. Annexed hereto as **Exhibit A** are copies of Arent Fox's time records containing the notations "DM" or "RMS" adjacent to time entries that describe Arent Fox's lawyers preparing the retention applications for DM or RMS. The total amount of fees that Arent Fox seeks to bill the estates for services is approximately $9,000.00. As mentioned, Arent Fox has failed to meet its burden of proof to show that these fees are compensable and, therefore, the United States Trustee proposes that the Court reduce any award of fees to Arent Fox by $9,000.00, which represents the amount that Arent Fox seeks for these time entries.

**Reasonableness – The 341 Memo**

72. Section 330 of the Bankruptcy Code requires that the Court must determine that the fees requested by the professional are reasonable. 11 U.S.C. § 330(a)(1)(A). Arent Fox seeks an allowance of fees in the amount of approximately $3,400.00 for approximately 8 hours spent by two associates and one partner in preparing a memo summarizing the meeting of creditors conducted pursuant to Section 341(a) of the Bankruptcy Code. Even assuming the meeting lasted for an extended time, Arent Fox has not met its burden of proof to show that its request to be paid $3,400.00 for three attorneys to prepare a memo detailing the proceedings at a 341(a) meeting is reasonable. Accordingly, the United States Trustee proposes that the Court reduce any fees awarded to Arent Fox by $1,830.00, which would permit Arent Fox to receive $1,570.00 in fees for this service, or 2 hours of associate time and 1 hour of partner time.

(ii)     Expenses

**Telephone Charges**

73.     By its application, Arent Fox requests reimbursement of $192.92 for telephone charges.  Neither the Arent Fox Fee Application nor the Certification of Andrew I. Silfen, dated August 22, 2011, provides a description for these charges to support that they were actual and necessary expenses related to this case.  See UST Guidelines at b(5)(iii) and (vi).  Further, with the exception of one telephone charge, it is not possible to determine whether these charges are for in-office telephone calls or cellular phone usage.  Thus, it is not possible to determine whether the charges comply with the Amended Guidelines.  See Amended Guidelines at E4 (setting forth guidelines for cellular phone expense reimbursements).  Absent explanation, the United States Trustee proposes that the Court reduce any expenses awarded to Arent Fox by the amount of $192.92.

**Telecopier/Facsimile Charges**

74.     Arent Fox seeks reimbursement in the amount of $3.00 for facsimile charges associated with local telephone numbers.  The Amended Guidelines only permit reimbursement for outgoing facsimiles sent to long distance telephone numbers.  See Amended Guidelines at E3.  Facsimile charges for outgoing faxes to local telephone numbers is a part of the firm's overhead and not compensable.  See also, UST Guidelines at b(5)(vii).  Accordingly, the United States Trustee proposes that this expense reimbursement be disallowed in its entirety.

**Travel**

75.     Arent Fox seeks reimbursement in the amount of $114.62 for travel described as "8/21/09: CRC Management Inc. DEST: Wayne, Wayne."  This description does not comply with either the Amended Guidelines or the UST Guidelines.  <u>See</u> Amended Guidelines at E.5; UST Guidelines at b(5)(iii) and (vi).  Accordingly, the United States Trustee proposes that this expense reimbursement be denied in its entirety.

**Meals**

76.     Arent Fox seeks reimbursement for two meal charges for Attorney James Sullivan: (a) $24.00 on 8/20/09 and (b) $3.91 on 12/2/09.  Although it is clear that the first charge exceeds the $20.00 maximum allowable under the Amended Guidelines for meal reimbursements, it is not possible to determine whether any part of the remaining $20.00 or the separate charge of $3.91 comply with Amended Guidelines, that is, that the charges were incurred for "meals" after 8:00 p.m. or during a necessary business meeting.  <u>See</u> Amended Guidelines at E.5.  Accordingly, the United States Trustee proposes that these expense reimbursement requests be denied in their entirety.

## V.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court enter an Order (i) reducing the fees allowed to the Retained Professionals by the amounts

set forth herein, (ii) reducing the reimbursements of expenses to the Retained

Professionals by the amounts set forth herein and (iii) granting such other relief as is just.

Dated: New York, New York
September 9, 2011

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By  */s/ Andrea B. Schwartz*
Andrea B. Schwartz
Trial Attorney
33 Whitehall Street, 21st Floor
New York, New York 10004
Tel. No. (212) 510-0500
Fax No. (212) 668-2255